UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSE FLYNN,

        Plaintiff/Counter-Defendant,        Case No. 1:13-cv-296

v.        HON. JANET T. NEFF

DEUTSCHE BANK NATIONAL
TRUST COMPANY,

        Defendant/Counter-Claimant.
_____/

**OPINION**

Plaintiff filed this case in Berrien County, Michigan, Circuit Court, seeking declaratory and injunctive relief to enjoin foreclosure of real property owned and mortgaged solely by her late husband, Robert Flynn, during their marriage. Defendant removed the case to this Court and filed a counterclaim alleging five counts. The threshold dispute between the parties was whether Plaintiff was a resident of Michigan such that she had a valid dower interest in the real property. The Court permitted the parties limited discovery, including Plaintiff's deposition and document discovery, on the issue of Plaintiff's domicile/residence to determine Plaintiff's dower interest in the property (Dkt 31). Pending now before the Court are the parties' cross-motions for summary judgment (Def. Mot., Dkt 66; Pl. Mot, Dkt 68). For the reasons that follow, the Court denies Defendant's Motion and grants Plaintiff's motion.

**I. Facts**

Pursuant to this Court's dispositive motion procedures, the parties have filed a Joint

Statement of Material Facts (JSMF, Dkt 64), which sets forth the following uncontested facts for purposes of the motions.

*Facts Relative to Property Interests*

1. On September 29, 1980, Robert Flynn and his then wife, Thomasine Flynn, acquired title to the real property at issue in this action commonly known as 10184 Townline Road, Union Pier, Michigan 49129, (the "Property"), pursuant to a certain warranty deed bearing that date and recorded on July 6, 1982, in Liber 1166, Page 613, Berrien County Records.

2. On April 18, 1997, Thomasine Flynn died and title vested exclusively in Robert Flynn, as a single man.

3. On September 21, 1998, Robert Flynn and Rose Flynn were married in Chicago, Illinois.

4. On September 13, 2006, subsequent to the death of Thomasine Flynn, Robert Flynn conveyed the Property in favor of himself, as a single man, pursuant to a certain quit claim deed bearing that date and recorded on September 27, 2006, in Liber 2746, Page 1423, Berrien County Records (the "Robert Flynn Deed").

5. On September 13, 2006, Robert Flynn refinanced a prior mortgage loan obligation and borrowed the sum of $284,000.00 from Washington Mutual Bank (the "Loan"). Repayment of the Loan was secured by a first priority mortgage encumbering the Property bearing that date and recorded on September 27, 2006, in Liber 2746, Page 1425, Berrien County Records (the "Mortgage").

6. In all of the relevant loan closing documents, and in the Mortgage itself, Robert Flynn represented himself as a single man.

7. Robert Flynn utilized the Loan proceeds to the extent of $243,743.20 to pay off and discharge a prior mortgage encumbering the Property in favor of Wells Fargo Home Mortgage and recorded on March 24, 2006, in Liber 2697, Page 908, Berrien County Records (the "Wells Fargo Mortgage").

8. On December 18, 2012, the Mortgage was assigned in favor of Deutsche Bank pursuant to a certain Assignment of Mortgage.

9. On March 6, 2007, unbeknownst to Deutsche Bank, Robert Flynn died as evidenced by his Certificate of Death.

10. Prior to his death, Robert Flynn had not conveyed a fee simple interest in the Property to any entity or person other than himself.

11. On April 1, 2010, Rose Flynn executed a certain quit claim deed bearing that date and recorded on April 1, 2010, in Liber 2916, Page 559, Berrien County Records (the "Rose Flynn Deed").

12. Rose Flynn entered into a trial loan modification agreement.

13. Subsequent to Robert Flynn's death, the Mortgage went into default and foreclosure proceedings commenced.

* * *

*Facts Relating to Residency and Bankruptcy*

23. On January 27, 2003, Rose Flynn filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois wherein she attested she was an Illinois resident residing at 7940 S. Rhodes, Chicago, Illinois 60619.

24. Schedule I of Rose Flynn's bankruptcy schedules referenced her as a "single woman."

25. Schedule I of Rose Flynn's bankruptcy schedules stated that she had been employed at Advocate Health Care in Chicago, Illinois for 24 years.

26. Rose Flynn testified at her deposition that she had worked at Advocate Health Care in Chicago, Illinois for nearly 30 years retiring in 2010.

27. Rose Flynn's employer's checks were issued to her using an Illinois address.

28. On August 31, 2006, Rose Flynn filed a Notice of Change of Name or Address attesting to the bankruptcy court that her new address was 425 West 100th Place, Chicago, Illinois 60628.

29. Rose Flynn failed to disclose any interest in the Property in Schedule A of her bankruptcy schedules.

30. Rose Flynn failed to amend her petition to disclose her potential lawsuit against Deutsche Bank relative to the Property.

31. Rose Flynn maintained an Illinois driver's license from 2000 through 2008.

3

32. Rose Flynn's federal and state tax returns and other related tax documents from 2007 through 2013 references to an Illinois address as her home address and for tax credit purposes.

33. Rose Flynn's W-2 forms and other related tax documents from 2005 through 2013 listed an Illinois address.

34. Rose Flynn acquired a 1991 Chevy Lumina in September 2003, which was registered in Illinois in October 2004 and re-registered in Illinois in September 2006. Rose Flynn maintained Illinois plates on the car until 2010.

## II. Legal Standards

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013); *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citation omitted).

The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010). The burden then "shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "There is no genuine issue for trial where the record 'taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Burgess*, 735 F.3d at 471 (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The ultimate inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sierra Brokerage Servs.*, 712 F.3d at 327 (quoting *Anderson,* 477 U.S. at 251-52).

### III. Analysis

Defendant argues that Plaintiff's claims fail because Deutsche Bank (Defendant) has priority over Rose Flynn's (Plaintiff's) purported dower interest, which is subordinate thereto. Further, and in any event, equitable principles apply to render Defendant's mortgage superior to any interest of Plaintiff.

Plaintiff argues that she is entitled to dower in the property; her husband died seized of that real estate; and therefore, her dower interest is superior to Deutsche Bank's mortgage interest. It is Plaintiff's contention that Robert Flynn's mortgage to Washington Mutual created a mortgage lien, but did not impair Rose's right to claim dower as a right superior to the mortgage; and upon Robert's death, Rose became entitled to possession of an undivided one-third of the property, and any foreclosure of the mortgage is subject to that dower interest. Plaintiff asserts that contrary to Defendant's argument, it is immaterial whether she is a resident of Michigan because even as a nonresident, she is entitled to claim a dower in property if her husband died seized of the property. Further, there is no basis for estoppel, and Defendant's mortgage is valid, so equity will not rewrite it.

#### A. Non-Resident Dower Interest

First, with respect to whether Plaintiff's dower interest is subordinate to Defendant's mortgage lien, the parties provide no authority directly on point to resolve this issue, and this Court has found none. However, based on the relevant Michigan statute and the scant case law addressing dower interests in related contexts, the Court concludes that Plaintiff prevails on this issue.

"MICH. COMP. LAWS § 558.1 governs a wife's dower interest as follows: 'The widow of every deceased person, shall be entitled to dower, or the use during her natural life, of 1/3 part of

5

all the lands whereof her husband was seized of an estate of inheritance, at any time during the marriage, unless she is lawfully barred thereof.'" *Zaher v. Miotke*, 832 N.W.2d 266, 271 (Mich. Ct. App. 2013). "The statute, first enacted in 1846, codified the common-law rule of dower." *Id.* (citing *Redman v. Shaw*, 1 N.W.2d 555, 556 (Mich. 1942)). Michigan courts look to the common-law definitions of terms used, but not defined in the statute. 1 JOHN G. CAMERON, JR., MICHIGAN REAL PROPERTY LAW § 8.2, p. 286 (3d ed. 2005).

Based on the stipulated facts, the Court finds as a threshold matter that Plaintiff advances her dower claim as a nonresident. Plaintiff agrees with Defendant that "'Michigan law is clear that a wife who voluntarily resides outside of Michigan is not entitled to inchoate dower in real estate located in Michigan, and is bound by any conveyances made by her husband during his lifetime'" (Pl. Reply, Dkt 71 at Page ID# 621, quoting Def. Br., Dkt 75 at Page ID# 647).[1] Pursuant to MICH. COMP. LAWS § 558.21, addressing the dower right of aliens and nonresidents:

> A woman being an alien, shall not on that account be barred of her dower, and any woman residing out of the state, shall be entitled to dower of the lands of her deceased husband, lying in this state, of which her husband died seized, and the same may be assigned to her, or recovered by her, in like manner as if she and her deceased husband had been residents within the state at the time of his death.[2]

---

[1] A wife's right of dower is an "inchoate" right that is not consummated until the death of the spouse. *Douglass v. FirstMerit Bank* (*In re Douglass*), Case No. 13–32823, 2015 WL 5813365, at *3 (Bankr. E.D. Mich. 2015).

[2] "The Revised Statutes of 1838, p. 265, section 15, allowed dower in such cases [cases involving a woman residing out of the state and lands of her husband lying in this state, of which her husband was *not* seized at the time of his death]. This section reads, '*and any woman residing out of this state shall be entitled to dower in the lands of her deceased husband lying within the state.*' The Revised Statutes of 1846, p. 270, section 21, first changed this law and restricted the right by adding to the law of 1838 the words, '*of which her husband died seized*': Comp. L., 853, § 2792." *Pratt v. Tefft*, 14 Mich. 191, 194, 1866 WL 2846, at *2 (Mich. 1866).

Plaintiff argues that under § 21, if the husband dies "seized" of the property, the statute expressly gives the nonresident widow dower rights. Plaintiff contends that Robert died "seized" of the property because under Michigan law a mortgage does not convey title in the land, and thus her dower interest remains, and will co-exist with the mortgagee or the successful purchaser at the foreclosure sale (Dkt 71 at Page ID# 623). That is, the lien concept of the mortgage and the wife's exclusive right to keep or waive dower lead to the conclusion that Plaintiff's dower interest is superior to the mortgage that Robert granted (*id.* at Page ID# 624-25).

Plaintiff is in part correct. Based on the common-law definitions of "seized" and "estate of inheritance," Robert died "seized" of the property at issue since he was in possession of a freehold estate. *See* 1 CAMERON § 8.2, p 286 (quoting *Redman v. Shaw*, 1 N.W.2d at 556). And the property was an estate of inheritance, i.e., either a fee simple or a fee tail. *Id.*, p. 287. Thus, under § 21, Plaintiff's nonresidency does not preclude a claim of a dower interest.

However, the analysis does not end here. The key question is whether the dower interest remains, and is superior or subordinate to Defendant's interest, in light of Robert's mortgage.

In general, "[w]hen a person seized of an estate of inheritance in lands has executed a mortgage of that estate before marriage, his widow is entitled to a dower out of the lands mortgaged as against every person except the mortgagee and those claiming under the mortgagee." 13 MICH. CIV. JUR. *Husband and Wife* § 41 (citing MICH. COMP. LAWS § 558.3). "However, when a husband purchases lands during the marriage, and mortgages his estate in the lands to secure the payment of the purchase money, his widow is not entitled to a dower out of those lands, as against the mortgagee or those claiming under the mortgage, even though she has not united in the mortgage,

7

but she is entitled to her dower as against all other persons." *Id.* (citing MICH. COMP. LAWS § 558.4); *see also* Michigan Land Title Standards (6th ed.), Standard 4.5.

Here, Robert possessed the land in question before his marriage to Plaintiff, but the mortgage to Defendant occurred during their marriage. Thus, if the mortgage was made to secure the payment of the purchase money, Plaintiff clearly would not be entitled to a dower right superior to the mortgage lien. "All mortgage interests created subsequent to the marriage are subject to the wife's inchoate dower unless she bars it, except a purchase money mortgage (any mortgage given to secure the payment of the purchase money) given by the husband when he purchases lands during coverture." 1 CAMERON § 8.5, p. 290. "This is because the law views both the deed and the purchase money mortgage as constituting a single transaction, with title passing by the deed subject to the mortgage." *Id.* (citing *Young v McKee*, 13 Mich. 552 (1865); *see also In re Douglass*, Case No. 13–32823, 2015 WL 5813365, at *3 (Bankr. E.D. Mich. 2015)).

Because Robert's mortgage was not a purchase money mortgage, it is subject to Plaintiff's dower interest. The mortgage to Defendant[3] was the result of a refinancing. The loan proceeds Robert obtained from Defendant were used in large part to pay off and discharge a prior mortgage encumbering the Property in favor of Wells Fargo Home Mortgage and recorded on March 24, 2006. Under these circumstances, Plaintiff's dower interest is superior to Defendant's mortgage lien.

Contrary to Defendant's argument, this case is not governed by *First National Bank of Buchanan v. Twombly*, 251 N.W. 777 (Mich. 1933). In *Twombly*, the plaintiff mortgagee, First National Bank of Buchanan, foreclosed on the property at issue, located in Berrien County,

---

[3]Defendant is the assignee of the mortgage, which was originally with Washington Mutual Bank, but for purposes of this Opinion, the Court will simply refer to Defendant as one in the same since the parties make no arguments related to Defendant's position as an assignee.

Michigan, and at the mortgage sale "bid in the land." *Id.* at 777. The nonresident defendant wife, who lived in New York separately from her husband Willard Twombly, had obtained a decree against her husband for separate maintenance and a judgment against him, and caused an execution to be levied upon the lands in question. *Id.* The wife filed an affidavit with the register of deeds averring that the mortgage purported to be joined by Willard Twombly's wife, was signed by a woman who was not his wife,[4] and the defendant wife claimed a dower interest in the property. *Id.* The plaintiff Bank, after perfecting its title by foreclosure and purchase at the mortgage sale and quitclaim deed thereof, filed an action to quiet title. *Id.* The court recognized that "[h]ad defendant's husband died in Michigan she would have been entitled to dower only in the lands of which he died seized." *Id.* The court found, however, that the defendant wife, had never lived in Michigan and never acquired dower rights in the land. *Id.* at 778. Thus, her rights under the execution were cut off by the mortgage sale to the plaintiff. *Id.*

*Twombly* stands for the proposition that a nonresident wife's dower interest is extinguished by a mortgage foreclosure sale and expiration of the redemption period: "Because a wife residing outside Michigan is entitled to dower only out of the lands of which her husband died seized of an estate of inheritance, her rights will be extinguished by a bona fide mortgage foreclosure sale and expiration of the redemption period before the husband's death." 1 CAMERON § 8.5, p. 290 (citing *Twombly*, 251 N.W. 777). Similarly an outright conveyance of the land does not run afoul of a nonresident wife's dower interest. "[A] wife who voluntarily resides outside Michigan is not entitled to inchoate dower in real estate in Michigan conveyed out by her husband during his

---

[4]The woman was then living with Willard Twombly on the farm as his wife. *Twombly*, 251 N.W. at 777.

lifetime." 1 CAMERON § 8.4, p. 289 (citing *Gluc v. Klein*, 197 N.W. 691 (Mich. 1924), and *Putney v. Vinton*, 108 N.W. 655 (Mich. 1906)). "Under [Michigan] laws the sale by a husband whose wife is non-resident carries the property free from any right of dower. Actual non-residence in such case, in spite of the marital relation, cuts off any control over the sale of a complete title." *Stanton v. Hitchcock*, 31 N.W. 395, 396 (Mich. 1887). Thus, *Twombly* involved not only a mortgage "conveyance," as characterized by Defendant, but also a conveyance of title upon the mortgage sale and quit-claim deed, and contrary to Defendant's argument, does not support a conclusion that Plaintiff's dower interest is subordinate to the mortgage here where no such sale occurred.

## B.  Equitable Relief

Defendant contends that even if it does not prevail under the statute, the Court should find that Defendant prevails on equitable principles based on (1) judicial estoppel, or (2) an equitable mortgage. The Court is not persuaded by these arguments.

### 1.  Judicial Estoppel

Defendant argues that even if Plaintiff's claim of priority is accurate under the governing law, Plaintiff should be barred from claiming that priority based on judicial estoppel because of her representations under oath in her bankruptcy proceedings that she was single, and her failure to disclose any potential interest in or claim to the property.

"The doctrine of judicial estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citation omitted)). "This doctrine is 'utilized in order to preserve the integrity of the courts by preventing a party from abusing the judicial process

through cynical gamesmanship.'" *Id.* (citations and internal quotations omitted). However, judicial estoppel should be "applied with caution to 'avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement.'" *Id.* (quoting *Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894, 897 (6th Cir 2004) (quotations omitted)).

First, the Court finds no support for estoppel as a result of Plaintiff's failure to list the property or her future interest in her bankruptcy. Defendant states that Plaintiff was in bankruptcy proceedings from January 27, 2003 to October 30, 2006 (Def. Br., Dkt 75 at Page ID# 644). At that time Robert Flynn was still alive, and the property was held solely by him. Defendant acknowledges that "Michigan law is clear that a wife who voluntarily resides <u>outside of Michigan</u> is not entitled to inchoate dower in real estate located in Michigan, and is bound by any conveyances made by her husband during his lifetime" (*id.* at Page ID# 647); *see* Michigan Land Title Standards (6th ed.), Standard 4.7. Thus, at the time of her bankruptcy, Plaintiff had no interest in the property to disclose. Moreover, subsequent to Robert Flynn's death on March 6, 2007, Plaintiff apparently started paying the mortgage payments to Defendant, and continued to do so until approximately December 2009 (Def. Br., Dkt 75 at Page ID# 646), which inured to Defendant's benefit. The fact that Plaintiff identified herself as single, absent any showing of reliance or clear prejudice to Defendant, is of little import here. In short, the circumstances cited by Defendant do not warrant the application of judicial estoppel to prohibit Plaintiff from claiming her dower interest.

### 2. Equitable Mortgage

Defendant contends that all else aside, this action to quiet title is equitable, MICH. COMP. LAWS § 600.2932, and the Court should grant Defendant equitable relief. Defendant argues that it

11

is entitled, at a minimum, to an equitable mortgage superior to Plaintiff's purported interest. The Court declines to impose an equitable mortgage superior to Plaintiff's dower interest—which essentially would do in equity what is not permitted in law under the Michigan statute, MICH. COMP. LAWS § 558.21.

## IV.  Conclusion

On the facts and arguments presented, the Court concludes that Plaintiff's dower interest is superior to Defendant's mortgage lien. Defendant's motion for summary judgment is properly denied; and Plaintiff's motion for summary judgment is properly granted. An Order will enter consistent with this Opinion.


Dated: February 11, 2016                             /s/ Janet T. Neff
                                                                                            JANET T. NEFF
                                                                                            United States District Judge